```
                                               FILED
                                           BILLINGS, MT

                                         2006 FEB 3 AM 9 49

                                         PATRICK E. DUFFY, CLERK
                                         BY
IN THE UNITED STATES DISTRICT COURT      ─────────────────
                                             DEPUTY CLERK
     FOR THE DISTRICT OF MONTANA

           BILLINGS DIVISION
```

TRI-CITY RAILROAD COMPANY, LLC, )
a Washington Limited Liability  )
                                )   Cause No. CV 02-49-BLG-RWA
                Plaintiff,      )
                                )   **SUPPLEMENTAL FINDINGS**
     vs.                        )   **AND RECOMMENDATION**
                                )   **OF UNITED STATES**
TALGO-LRC, LLC, a Delaware Limited ) **MAGISTRATE JUDGE**
Liability Company,              )
                                )
                Defendant.      )

On August 31, 2005, the undersigned entered findings and recommendations on plaintiff's motion for partial summary judgment and defendant's motion for summary judgment. The Court concluded that defendant, Talgo-LRC, LLC, was in breach of an amended sublease and recommended that summary judgment on the issue of liability be granted in favor of plaintiff, Tri-City Railroad Company, LLC.

Shortly thereafter, defendant moved for leave to seek reconsideration. Defendant contended that two circumstances justified its motion: (1) prior to the entry of the findings and recommendations the parties had entered into a binding, enforceable, settlement agreement resolving the case, thereby mooting the need for the Court's rulings; and (2), in the

alternative, arbitration proceedings in a related matter had become sufficiently final as to collaterally estop plaintiff from arguing that defendant had assumed the amended sublease.

In light of these new developments, the Court granted leave to file a motion for reconsideration. L.R. 7.3. The motion was briefed, and pursuant to defendant's request, an evidentiary hearing was held on the question of whether a binding settlement had been reached. Having considered the arguments of parties and the documentary evidence and testimony presented in open court on January 24, 2006, the undersigned issues the following supplemental findings and recommendation.

### A. Settlement Agreement

Randolph Peterson is a member and manager of plaintiff, Tri-City. Peterson also owns or controls several other entities, including USA Northwest, a defendant in the above-referenced arbitration proceedings. Kenneth Tolliver represents USA Northwest in the arbitration proceedings and has represented other Peterson entities in the past. He is not, however, an attorney of record for Tri-City in this case.

While cross motions for summary judgment were pending in this action and after the arbitrator had issued his interim arbitration award, Tolliver approached counsel for defendant, William Lambdin, concerning settlement of claims between the Peterson entities and the Talgo entities, with the exception of this lawsuit. Lambdin responded that only a global settlement of all claims, including

this action, would be acceptable. Lambdin and Tolliver thereafter engaged in settlement discussions, culminating, according to Lambdin, with a telephone call initiated by Tolliver on August 26, 2005, in which Lambdin offered to settle all matters, including this case, for $22,000, to which Tolliver responded, "We'll take it."

Lambdin testified that settlement papers were not immediately drawn up because Tolliver went on vacation after the conversation and, consequently, there was no need to hurry the formalities.

No party informed the Court of any settlement, and on August 31, 2005, the Court issued its findings and recommendations in favor of plaintiff. Immediately thereafter, Lambdin wrote Tolliver a letter confirming the agreement to settle all outstanding disputes between their clients for $22,000. Tolliver responded:

> I have not shared our settlement conversations at this point with either Mr. Petit [counsel of record in this case] or with Mr. Peterson. . . . I am doubtful the settlement concept that we discussed on the Friday before I left town will be acceptable with either Peterson or Petit. . . .

Ex I, Def's Motion for Reconsideration.

Defendant contends that despite Tolliver's attempt to disavow the settlement, the parties entered into a binding, enforceable agreement. Tri-City replies that the agreement is unenforceable because Peterson was unaware of and did not consent to any settlement, and absent Peterson's knowledge and consent, Tolliver was not authorized to bind plaintiff to any settlement.

Tri-City concedes that Tolliver was authorized to engage in

3

settlement discussions. It does not concede, however, that Tolliver was empowered to make final decisions regarding settlement. Indeed, there is no evidence that Tolliver was authorized to bind Tri-City to any agreement. Nor is there any evidence that he conveyed the substance of the settlement discussions to Peterson or that Peterson agreed to accept Lambdin's offer of August 26, 2005, to settle all claims. Without Peterson's knowledge and consent, there can be no binding, enforceable settlement.

The Montana cases cited by the parties are in accord. In each instance where the Montana Supreme Court has enforced a settlement agreement, the parties themselves, not just their attorneys, had agreed to the basic terms of the settlement. For example, in *Hetherington v. Ford Motor Co.*, 849 P.2d 1039 (Mont. 1993), the plaintiffs met with their attorney, agreed to an offer, and gave the attorney authority to accept it. After counsel conveyed the acceptance to defendant, plaintiffs attempted to disavow the settlement. The Montana Supreme Court rebuffed their attempt, holding that plaintiffs were bound by their unconditional acceptance.

The court likewise held that the plaintiffs in *Marta Corp. v. Thoft*, 894 P.2d 333 (Mont. 1995), were bound by a settlement where they participated in settlement discussions during which general settlement terms were formulated. Again, in *Bar OK Ranch, Co. v. Ehlert*, 40 P.3d 378 (Mont. 2002), parties who were present at and

4

took part in settlement negotiations were bound by the agreement. Most recently, in *Lockhead v. Weinstein*, 81 P.3d 1284 (Mont. 2003), the Court enforced a settlement where the plaintiff conceded that he had authorized his attorney to inform defendant that plaintiff accepted the settlement offer.

On the other hand, the court in *Behling v. Russell*, 293 F.Supp.2d 1178 (D. Mont. 2003), refused to enforce a settlement agreement because the parties challenging the agreement were not present for the agreement and did not personally approve it.[1] Thus, Montana law is clear that absent some evidence of acceptance to the terms of the settlement by the party itself, the agreement is not binding and enforceable.

Defendant argues that even if Tolliver did not have actual authority to bind plaintiff, he had ostensible authority to do so. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Section 28-10-403, MCA. Here, there is no evidence that Peterson cloaked Tolliver with authority to bind

---

[1] The federal court in *Behling* based its decision, in part, on the literal terms of § 37-61-401(1)(a), which provides that an attorney cannot bind his client unless an agreement has been filed with the clerk of court or entered upon the court's minutes. Only two weeks later, however, the Montana Supreme Court in *Lockhead* held that the statute need not be literally applied and that an attorney may bind his client to a settlement even though the agreement has not been filed or entered upon the records of the court. Even so, as the above discussion demonstrates, the agreement is binding on the client only if the client has authorized his attorney to accept the terms of the agreement or personally participated in settlement negotiations.

5

plaintiff in this action. Tolliver was not even attorney of record for Tri-City. Furthermore, defendant's contention that it was led to believe that Tolliver was empowered to bind Tri-City is belied by Lamdin's letter of August 9, 2005, in which he made a settlement offer of $18,000 and wrote, "Please discuss with your clients and advise." Ex F, Def's Motion for Reconsideration. Having himself recognized the need for Tolliver to obtain his clients' approval, Lambdin cannot now claim that he believed that Tolliver had the authority to bind Tri-City without Peterson's knowledge or consent.

Indeed, Lambdin and Tolliver may have believed that they reached a settlement on August 26, 2005. Even so, the Court cannot enforce the settlement without evidence that Tri-City, through Peterson, approved the agreement. There is no evidence that it did so.

Defendant's request that the Court withdraw its previous findings and recommendations as mooted by the settlement agreement should be denied.

### B. Arbitration Award

In the interim arbitration award, the arbitrator found that the amended sublease at issue in this case was not assumed by defendant through the Interests Purchase Agreement (IPA) which resulted in defendant's formation. Defendant therefore urged this Court to collaterally estop Tri-City from arguing that the amended sublease was assigned to defendant through the provisions of the IPA. The Court declined defendant's request for the reason that

the arbitration was not yet final. The arbitration award has since become final, and defendant argues that collateral estoppel should now apply.

Even if the Court adopts defendant's position, the outcome is the same. The Court's conclusion that defendant was liable under the amended sublease was not based on any interpretation of the IPA or the events leading up to the creation of the defendant. Rather, it was based on a finding that, after defendant had been formed, Peterson, as president of defendant, accepted an assignment of the amended sublease.

The arbitrator looked only at what occurred during the formation of defendant. The Court reviewed what happened after defendant came into being. Thus, even though, as the arbitrator found, defendant did not automatically assume the sublease through the agreement creating defendant, defendant in its own right, following its formation, expressly accepted an assignment of the amended sublease.

The Court's ruling and the arbitrator's are not inconsistent.[2] The Court found that defendant was liable under the terms of the amended sublease due to the express assignment from Tri-City to

---

[2] Even the arbitrator recognized that the "specific issues in the arbitration differ from those in the federal court matter." Final Arbitration Award at 4.
Indeed, it could be argued that the parties put the cart before the horse in proceeding with the arbitration prior to a decision from this Court. Until this Court decided whether a breach occurred, there was no need to determine the indemnity question that was the main subject of the arbitration.

7

defendant after defendant had been created. This issue was neither presented to nor decided by the arbitrator. Thus, regardless of the finality of the arbitrator's decision that the amended sublease should have been disclosed in the IPA, the Court's previous ruling stands.

### SUPPLEMENTAL RECOMMENDATION

In accordance with the foregoing, the undersigned United States Magistrate Judge **RECOMMENDS** that defendant's motion for reconsideration (doc. 71) be denied. The Court's recommendations of August 31, 2005, remain unchanged.

The previous stay of the time for objecting to the Court's recommendations is hereby lifted. The parties shall have 10 days from receipt of this supplemental recommendation to file objections to it and to the recommendations of August 31, 2005.

The Clerk of Court shall forthwith serve counsel of record with this supplemental recommendation.

Done and dated this 3d day of February, 2006.

RICHARD W. ANDERSON
UNITED STATES MAGISTRATE JUDGE